## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:

ERICK OBDEUS,

        Plaintiff,

vs.

WELLS FARGO BANK CORPORATE TRUST SERVICES, AS TRUSTEE FOR THE POOLING AND SERVICING AGREEMENT DATED AS OF MAY 1, 2005 PARK PLACE SECURITIES, INC. ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2005-WHQ3 and OCWEN LOAN SERVICING, LLC,

        Defendants.
_____/

## COMPLAINT

**COMES NOW,** the Plaintiff, ERICK OBDEUS, by and through undersigned counsel, and brings this action against the Defendants, WELLS FARGO BANK CORPORATE TRUST SERVICES, AS TRUSTEE FOR THE POOLING AND SERVICING AGREEMENT DATED AS OF MAY 1, 2005 PARK PLACE SECURITIES, INC. ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2005-WHQ3 ("WELLS FARGO") and OCWEN LOAN SERVICING, LLC ("OCWEN"), and as grounds thereof would allege as follows:

### INTRODUCTION

1. This is an action brought by a consumer for Defendants' violation of the Truth In Lending Act, 15 U.S.C. §§ 1601, *et seq.* ("TILA") and the Real Estate Settlement Procedures Act, 12 U.S.C §§ 2601, *et seq.* ("RESPA"), and their implementing regulations, and Florida Statutes

§§ 559.55-559.785, known more commonly as the "Florida Consumer Collection Practices Act" ("FCCPA").

2.  The Consumer Financial Protection Bureau ("CFPB") is the primary regulatory agency authorized by Congress to supervise and enforce compliance of RESPA. The CFPB periodically issues and amends mortgage servicing rules under Regulation X, 12 C.F.R. § 1024, RESPA's implementing regulation.

3.  The FCCPA prevents persons from engaging in abusive, deceptive, and unfair collection practices.

## JURISDICTION

4.  Jurisdiction of this Court arises under 28 U.S.C. § 1331 because the Complaint alleges a federal claim and requires the resolution of substantial questions of federal law.

5.  Moreover, this case is a civil action arising under the laws of the United States over which this Court has original jurisdiction under 28 U.S.C. § 1331.

6.  Under 28 U.S.C. § 1367(a), this court has supplemental jurisdiction over Plaintiff's state law FCCPA claim in that it is so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

7.  Venue in this District is proper because Plaintiff resides in Miami-Dade County, Florida, and this is the District where a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

## PARTIES

8.  At all times material hereto, Defendant, WELLS FARGO was and is a National banking institution chartered and supervised by the Office of the Comptroller of the Currency ("OCC"), an agency in the U.S. Treasury Department, pursuant to the National Bank Act, duly

licensed to transact business in the State of Florida, with a principal address of 420 Montgomery St., San Francisco, CA 94163, and lists its registered agent as Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

9. At all times material hereto, Defendant, OCWEN was and is a foreign limited liability corporation, incorporated under the laws of the State of Delaware; duly licensed to transact business in the State of Florida, and lists its registered agent as Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301-2525.

10. At all times material hereto, Defendant, WELLS FARGO was and is a creditor as the term is defined in 15 U.S.C. §1602(g).

11. At all times material hereto, Defendant, WELLS FARGO was and is an assignee pursuant to 15 U.S.C. § 1641. Upon information and belief, the assignment to WELLS FARGO was voluntary.

12. At all times material hereto, Plaintiff was and is a resident of Miami-Dade County, Florida, and owns a home, which is Plaintiff's primary residence, in Miami-Dade County.

13. At some point in time prior to the violations alleged herein, OCWEN was hired to service the subject loan.

14. At all times material hereto, OCWEN, is and was a loan servicer as the term is defined in 12 U.S.C. § 2605(i)(2) and 12 C.F.R. § 1024.2(b), that services the loan obligation owned by WELLS FARGO and secured by a mortgage upon Plaintiff's primary residence and principal dwelling, located at ***** NW 20 Avenue, Miami, Florida 33167.

15. At all times relevant to this Complaint, OCWEN, was and is a "person" as said term is defined under Florida Statute §1.01(3), and is subject to the provisions of Fla. Stat. § 559.72

because said section applies to "any person" who collects or attempts to collect a consumer debt as defined in Fla. Stat. § 559.55(1).

16. At all times relevant to this Complaint, OCWEN regularly uses the mail and telephone in a business for the purpose of collecting consumer debts.

17. Upon information and belief, the primary function of OCWEN's servicing business is to collect payment on mortgage accounts.

18. The debt that Defendant sought to collect from Plaintiff is an alleged debt arising from transactions entered into primarily for personal, family or household purposes.

19. At all times relevant to this Complaint, Plaintiff, was and is a natural person, and is a "consumer" as that term is defined by Florida Statutes §559.55(2), and/or a person with standing to bring a claim under the FCCPA by virtue of being directly affected by violations of the Act.

20. At all times material hereto, the debt in question was a "debt" as said term is defined under Florida Statute §559.55(1).

## BACKGROUND AND GENERAL ALLEGATIONS

21. Plaintiff's residence is a residential structure containing one to four family housing units.

22. The Note signed by Plaintiff in connection with the Mortgage serviced by OCWEN is a consumer credit transaction within the meaning of, and subject to, TILA.

23. The mortgage loan in question is a "residential mortgage transaction" as defined in 15 U.S.C. §1602(x).

24. The mortgage loan in question is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1) and 12 C.F.R. § 1024.2(b) and referred to by OCWEN as loan number: *****6137 (herein after the "Mortgage Loan").

25. Plaintiff has always prided himself in fulfilling his monthly mortgage payment obligations, which is why Plaintiff became extremely concerned in February 2015, when OCWEN rejected Plaintiff's monthly payment and returned the check payable to OCWEN.

26. Plaintiff was at a complete loss as to why the February 2015 payment was rejected. Plaintiff did not make the payment in any different manner than previous payments, which were accepted by OCWEN.

27. Plaintiff reached out to OCWEN after the February 2015 payment was returned to him.

28. On March 6, 2015, OCWEN responded to Plaintiff's request (the "March Response").

29. A true and correct copy of the applicable portion of the March Response is attached hereto as Exhibit "A".

30. In the March Response, OCWEN stated that it received a payment on "November 12, 2014, which was utilized to satisfy the September 1, 2014 payment" and "On December 9, 2014, [OCWEN] received funds… which was utilized to satisfy the October 1, 2014 contractual payment." *See Exhibit "A"*.

31. However, Plaintiff never missed a contractual payment. A true and correct copy of the checks made payable to OCWEN from February 2014 through December 2014, are attached hereto as Exhibit "B".

32. Interestingly, OCWEN stated that it then accepted the January 7, 2015, payment and applied it towards escrow. *See Exhibit "A"*.

33. Plaintiff has no idea why the payment was applied towards escrow.

34. OCWEN also stated that it received payment on February 17, 2015, which was "returned to the remitter as the funds were insufficient to cure the default on the loan." *See Exhibit "A"*.

35. The information provided in the March Response makes no sense. OCWEN claims Plaintiff was two payments behind (October and November 2014), but then accepted the January 2015 payment, misapplied those funds, and then rejected the February 2015 payment.

36. Subsequently, OCWEN rejected the March and April 2015 payments as well and returned the checks to Plaintiff.

37. Plaintiff then contacted OCWEN and OCWEN informed Plaintiff that he must pay $2,788.18 to reinstate the loan. However, only three payments, in the amount of $451.73, were returned. Thus, Plaintiff should have only owed $1,355.19.

38. Nonetheless, in fear of a potential foreclosure, Plaintiff subsequently made this payment in the amount of $2,788.18 to reinstate the Mortgage Loan. OCWEN accepted the payment.

39. A true and correct copy of the reinstatement payment is attached hereto as Exhibit "C".

## REQUEST FOR INFORMATION

40. Plaintiff was still concerned about what transpired and what happened to his previous payments in 2014.

41. In an effort to utilize the protections afforded to consumers by Congress, on or about June 26, 2015, Loan Lawyers, LLC ("Loan Lawyers")—on behalf of Plaintiff—mailed to OCWEN a written request for information pursuant to TILA, Regulation X, and Regulation Z ("Plaintiff's RFI"). OCWEN received Plaintiff's RFI on or about July 1, 2015.

42. A true and correct copy of same is attached as Exhibit "D".

43. Plaintiff's RFI asked OCWEN to: (1) provide an accurate statement of the total outstanding balance that would be required to satisfy the above-referenced obligation in full as of a specified date ("payoff statement"); (2) identify the owner of Plaintiff's Promissory Note; and (3) provide a complete pay history for the life of the loan; and (4) explain what happened to the payments in 2014 and why the February, March, and April 2015 payments were rejected.

44. OCWEN was obligated to provide an accurate payoff statement within seven (7) business days of receipt of Plaintiff's RFI, pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3).

45. Section 1639g of TILA, states: "A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower."

46. Section 1026.36(c)(3) of Regulation Z, states:

> [A] creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer.

12 C.F.R. § 1026.36(c)(3)

47.     OCWEN was obligated to disclose the identity of the owner of the obligation, as well as its address and telephone number pursuant to Section 1641(f)(2) of TILA and Section 1024.36(d)(2)(i)(A) of Regulation X.

48.     Specifically, Section 1641(f)(2) states in part: "Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation…"

49.     Section 1024.36(d)(2)(i)(A) requires a servicer to provide a response "not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the *identity* of, and address or other relevant contact information for, the *owner* or assignee of a mortgage loan." (emphasis added).

50.     OCWEN, was obligated to acknowledge receipt of Plaintiff's RFI in writing within five (5) business days pursuant to 12 C.F.R. § 1024.36(c).

51.     OCWEN, was obligated to provide a written response to Plaintiff's information requests within thirty (30) business days, which included the requested information or stated that the "requested information is not available to the servicer" and the "basis for the servicer's determination". *See* 12 C.F.R. § 1024.36(d).

52.     OCWEN failed to acknowledge receipt of Plaintiff's RFI, provide an accurate payoff statement, and provide the ownership information of the Mortgage Loan within the required timeframe.

53.     As such, on July 20, 2015, Plaintiff, through Loan Lawyers, sent OCWEN a correspondence informing OCWEN of the outstanding information.

54.     A true and correct copy of same is attached hereto as Exhibit "E".

55. A failure to provide an accurate payoff statement is also considered an "error" for purposes of 12 C.F.R. § 1024.35(b)(6). OCWEN was given notice of this error. *See* Exhibit "E".

56. OCWEN's failure to acknowledge receipt of the notice of error within five (5) business days is a violation of 12 C.F.R. § 1024.35(d).

57. OCWEN's failure to respond to this "error" within seven (7) business days thereafter, is a violation of 12 C.F.R. § 1024.35(e)(3)(i)(A).

58. Subsequently, OCWEN failed to issue a written response to Plaintiff's RFI within thirty (30) business days.

59. In a good faith attempt to obtain a response, on September 2, 2015, Plaintiff's counsel sent OCWEN a letter informing OCWEN that to date, Plaintiff had not received a response to Plaintiff's RFI. The letter provided OCWEN with an additional seven days to comply with the law.

60. A true and correct copy of the letter is attached hereto as Exhibit "F".

61. On September 10, 2015, more than two months after receiving the initial request, OCWEN sent a payoff statement to Loan Lawyers (the "Payoff").

62. A true and correct copy of same is attached hereto as Exhibit "G".

63. The Payoff contained two unlawful charges on it: (1) a "Property Inspection Fee" of $13.25; and (2) a "Transaction History Fee".

64. Plaintiff never defaulted on the Mortgage Loan and thus OCWEN had no right to charge Plaintiff a "Property Inspection Fee".

65. OCWEN never sent a transaction history to Plaintiff or his counsel and thus OCWEN had no right to charge Plaintiff a "Transaction History Fee".

66. As a result of the tardiness and improper charges tacked onto the Payoff, OCWEN failed to issue an accurate payoff statement upon request, contrary to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3).

67. OCWEN has failed or refused to timely provide the name, address and telephone number of the owner of the subject obligation, contrary to 12 C.F.R. § 1024.36(d)(2)(i)(A).

68. On September 17, 2015, OCWEN issued a written response to Plaintiff's RFI (the "September Response").

69. A true and correct copy of same is attached hereto as Exhibit "H".

70. The September Response failed to include a complete pay history or provide an explanation as to what happened to the payments in 2014.

71. The pay history was crucial to see what exactly happened to the payments in 2014.

72. Additionally, the September Response stated that "on April 20, 2015 we received funds in the amount of $2,788.18 which was utilize[d] to reinstate the loan from December 2014 to April 2015 contractual payment." *See Exhibit "H"*.

73. However, OCWEN only returned three payments – February, March and April 2015. Even assuming the December 2014 and January 2015 payments were not paid, which they were, that amounts to five (5) payments of $451.72 or $2,258.65. Yet, OCWEN required Plaintiff to pay $2,788.18, or $529.53 more than the five (5) payments OCWEN claims covered the reinstatement amount. It remains unclear what happened with the $529.53.

74. OCWEN has failed or refused to timely acknowledge receipt of and properly respond to Plaintiff's RFI, contrary to 12 C.F.R. § 1024.36(c) and 12 C.F.R. § 1024.36(d)(2)(i)(B).

### **COUNT I – VIOLATION OF 15 U.S.C. § 1639g**

75. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 74.

76. OCWEN violated 15 U.S.C. § 1639g by failing to provide an accurate payoff statement within seven (7) business days upon request.

77. Upon information and belief, WELLS FARGO has considerable control over OCWEN by virtue of a Servicing Agreement that governs their relationship.

78. Upon information and belief, the above-referenced agreement contains specific details and guidelines that OCWEN is to follow.

79. Upon information and belief, one of the very specific functions the Servicing Agreement was designed to cover was OCWEN's responding to requests for information, notices of error, and requests for payoff statements.

80. Upon information and belief, WELLS FARGO may terminate OCWEN's employment at any time.

81. As its servicer, OCWEN is the employee and agent of WELLS FARGO.

82. WELLS FARGO is responsible for OCWEN's failure to timely provide an accurate payoff statement since OCWEN was acting in furtherance and within the scope of its employment for WELLS FARGO.

83. Various courts in the Southern District have found that vicarious liability applies to TILA violations. *See* Lucien v. Federal Nat. Mortg. Ass'n, 2014 WL 2184934 (S.D. Fla. May 23, 2014); Khan v. Bank of New York Mellon, 849 F. Supp. 2d 1377 (S.D. Fla. Mar. 19, 2012); Kissinger v. Wells Fargo Bank, N.A., as Trustee for Soundview Home Loan Trust 2007–Opt2, Asset Backed Certificates, Series 2007–Opt2, 2012 WL 3759034 (S.D. Fla. August 30, 2012); and Santos v. Federal National Mort. Ass'n, 2012 WL 3860559 (S.D. Fla. Sept. 6, 2012).

84. Plaintiff has hired Loan Lawyers, LLC, for legal representation in this action and has agreed to pay a reasonable attorney's fee.

85. Plaintiff is entitled to the following damages for violations of TILA by Defendant, WELLS FARGO: statutory damages of not less than $400 nor greater than $4000 pursuant to 15 U.S.C. § 1640(a)(2)(A)(iv), and the costs of this action together with a reasonable attorney's fee as determined by the court, pursuant to 15 U.S.C. § 1640(a)(3).

### COUNT II –VIOLATION OF 12 U.S.C. § 2605(k)

86. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 74.

87. Section 6, Subsection (k) of RESPA states in relevant part:

> **(k) Servicer prohibitions**
> **(1) In general**
> A servicer of a federally related mortgage shall not--
> …
> **(C)** fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties;
> **(D)** fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan; or
> **(E)** fail to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.

12 U.S.C. § 2605(k)(emphasis added)

88. Sections 1024.35 (Notice of Error) and 1024.36 (Request for Information) of Regulation X were both promulgated pursuant to Section 6 of RESPA and thus subject to RESPA's private right of action. *See 78 Fed. Reg. 10696,* 10714, FN. 64 (Feb. 14, 2013)("The [CFPB] notes that regulations established pursuant to section 6 of RESPA are subject to section 6(f) of RESPA, which provides borrowers a private right of action to enforce such regulations"). *See also 78 Fed. Reg.* at 10737, 10753 (the CFPB noting that Section 1024.35 and 1024.36 implement Section 6(k)(1)(C) and 6(k)(1)(D) respectively).

89. The CFPB's authority to prescribe such regulations under Section 2605(k)(1)(E), is stated in Section 2617 of RESPA: "The [CFPB] is authorized to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter." 12 U.S.C. § 2617.

90. OCWEN has failed to comply with 12 C.F.R. § 1024.35(d) and 12 C.F.R. § 1024.35(e)(3)(i)(A) in that OCWEN did not provide a written acknowledgement or response to a notice of error asserted under 12 C.F.R. § 1024.35(b) within the required timeframe. As such, OCWEN has violated 12 U.S.C. § 2605(k)(1)(C).

91. OCWEN has failed to or refused to comply with 12 C.F.R. § 1024.36(c) and 12 C.F.R. § 1024.36(d)(2)(i)(B) in that OCWEN did not timely provide a written acknowledgement or proper response to a request for information within the required timeframe. As such, OCWEN has violated 12 U.S.C. § 2605(k)(1)(E).

92. Further, OCWEN has failed to or refused to comply with 12 C.F.R. § 1024.36(d)(2)(i)(A) in that OCWEN did not provide a response within ten (10) days after receiving an information request for the identity of, and address or other relevant contact information for the owner of Plaintiff's Promissory Note. As such, OCWEN has violated 12 U.S.C. § 2605(k)(1)(D).

93. Plaintiff has hired Loan Lawyers, LLC, for legal representation in this action and has agreed to pay a reasonable attorney's fee.

94. Plaintiff is entitled to actual damages as a result of Defendant, OCWEN's failure to comply with Regulation X and RESPA, pursuant to 12 U.S.C. § 2605(f)(1)(A), including but not limited to: (1) photocopying costs and postage costs incurred in mailing Plaintiff's RFI; and (2) photocopying costs and postage costs incurred as a result of having to send additional correspondences due to OCWEN's failure to adequately respond to Plaintiff's RFI. *See* Rodriguez

v. Seterus, Inc., No. 15-61253-Civ-COOKE/TORRES (S.D. Fla. 2015)(the Court finding that actual damages includes photocopying and postage costs due to servicer's noncompliance with RESPA); Saint-Fleur v. JPMorgan Chase Bank, N.A., No. 15-cv-61110-WPD (S.D. Fla. 2015); Almquist v. Nationstar Mortg., LLC, Case No 14-81178-CIV-RYSKAMP/HOPKINS at *5 (S.D. Fla. 2014)(same); Burdick v. Bank of Am., N.A., No. 14-62137-CIV, 2015 WL 1780982 (S.D. Fla. 2015)(same); McLean v. GMAC Mortg. Corp., 595 F.Supp.2d 1360, 1366 (S.D. Fla 2009)(same); Porciello v. Bank of America, N.A., 2015 WL 899942 (M.D. Fla. 2015)(same); Bryan v. Fed. Nat'l Mortg. Ass'n, 2014 WL 2988097 (M.D. Fla. 2014)(the court finding that the plaintiffs sufficiently alleged damages in the form of emotional distress, anxiety, embarrassment).

95.    Plaintiff is entitled to statutory damages in an amount not greater than $2000 pursuant to 12 U.S.C. § 2605(f)(1)(B), as a result of OCWEN's pattern or practice of noncompliance with Regulation X and RESPA.

96.    In this case alone, OCWEN has violated eight (8) separate provisions of Regulation X and RESPA. This demonstrates a pattern or practice of noncompliance.

97.    OCWEN has also failed to comply with Regulation X with respect to loan numbers: ******5374, ******2152, and ******7645.

98.    Plaintiff is entitled to the costs of this action, together with a reasonable attorney's fee as determined by the court, pursuant to 12 U.S.C. § 2605(f)(3).

**COUNT III-VIOLATION OF FCCPA, FLORIDA STATUTES §559.72(9)**

99.    Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 74.

100.   Florida Statutes § 559.72(9) states:

In collecting debts, no person shall:

(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such

person knows that the right does not exist.

Florida Statutes § 559.72(9).

101. The charge of a $13.25 "Property Inspection Fee" when Plaintiff was not in default on his mortgage payments is tantamount to an assertion of a legal right that OCWEN knows does not exist. Plaintiff made all of his monthly mortgage payments and thus OCWEN had no right to charge Plaintiff for a property inspection.

102. The charge of a $5.00 "Transaction History Fee", when OCWEN never provided Plaintiff or his counsel a transaction history, as requested, is tantamount to an assertion of a legal right that OCWEN knows does not exist. OCWEN has charged Plaintiff for something which was never provided.

103. OCWEN violated Section 559.72(9) by requiring Plaintiff to pay $2,788.18 to reinstate his loan. Plaintiff timely made all payments and even assuming he did not, OCWEN overcharged Plaintiff by $529.53. This is a claim to enforce a debt which OCWEN knows does not exist and it is an assertion of a legal right which OCWEN knows does not exist. OCWEN had no right to collect funds not due and owing.

104. OCWEN, through its agents, representatives and/or employees acting within the scope of their authority knowingly violated Florida Statutes §559.72(9).

105. As a direct and proximate result of the violation of the FCCPA by OCWEN, Plaintiff has been damaged. The damages of Plaintiff include but are not necessarily limited to mental pain and shock, suffering, aggravation, humiliation and embarrassment, unlawful charges, and overpayment of funds.

106. Plaintiff has hired Loan Lawyers, LLC, to represent him in this action and has agreed to pay a reasonable attorney's fee.

107. As a result of the above violations of the FCCPA, pursuant to Florida Statute §559.77(2), Plaintiff is entitled to recovery for actual damages, statutory damages of up to $1000 per violation, together with reasonable attorney's fees and court costs.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, ERICK OBDEUS, respectfully asks this Court to enter an order granting judgment for the following:

(a) That OCWEN be required to provide an accurate payoff statement;

(b) That OCWEN be required to provide the information requested in Plaintiff's RFI;

(c) That OCWEN be required to remove all unlawful fees from the Mortgage Loan;

(d) For actual damages, statutory damages, costs, and reasonable attorney's fees, pursuant to 15 U.S.C. § 1640(a), 12 U.S.C. § 2605(f), and Florida Statutes § 559.77(2); and

(e) Such other relief to which this Honorable Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, ERICK OBDEUS, hereby demands a trial by jury of all issues so triable.

Respectfully Submitted,

 /s/ Aaron Silvers
Aaron Silvers, Esq.
Florida Bar No.: 104811
E-mail: asilvers@floridaloanlawyers.com
Yechezkel Rodal, Esq.
Florida Bar No.: 91210
E-mail: chezky@floridaloanlawyers.com
LOAN LAWYERS, LLC
*Attorneys for Plaintiff*
2150 S. Andrews Ave., 2nd Floor
Fort Lauderdale, FL 33316
Telephone:     (954) 523-4357
Facsimile:     (954) 581-2786